# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| SARA BRATT,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>       Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-00905-SCJ |
| GLORIA ERAZO,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>       Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-00911-SCJ |
| ROB MCPHERSON,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>       Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-00921-SCJ |
| VIRGINIA WASHBURN,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>       Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01028-SCJ |

| | |
|---|---|
| MERRIE HOWELL,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>      Defendant. | CIVIL ACTION FILE<br><br>NO. 1:15-CV-01134-SCJ |
| KISCHA REED,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>      Defendant. | CIVIL ACTION FILE<br><br>NO. 1:15-CV-01146-SCJ |
| SARA BOWERS,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>      Defendant. | CIVIL ACTION FILE<br><br>NO. 1:15-CV-01164-SCJ |
| CLAIRE GRAFF,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>      Defendant. | CIVIL ACTION FILE<br><br>NO. 1:15-CV-01204-SCJ |

AO 72A
(Rev.8/82)

| | |
|---|---|
| TERRY BROWN,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>       Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01194-SCJ |
| JAMES BERUBE,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>       Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01214-SCJ |
| CATHY HEDRICH,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>       Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01278-SCJ |
| RITA CAVALLARO,<br><br>       Plaintiff,<br><br>   v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>       Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01286-SCJ |

AO 72A
(Rev.8/82)

| | |
|---|---|
| LEIGHANN FAULKNER,<br><br>   Plaintiff,<br><br>  v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01306-SCJ |
| JEAN HANSEN,<br><br>   Plaintiff,<br><br>  v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01336-SCJ |
| SCOTT KUSHNER,<br><br>   Plaintiff,<br><br>  v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01326-SCJ |
| KATHRYN JOHNSON,<br><br>   Plaintiff,<br><br>  v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01346-SCJ |

AO 72A
(Rev.8/82)

AMANDA LEE,

        Plaintiff,

    v.

GENTIVA HEALTH SERVICES, INC.,

        Defendant.

CIVIL ACTION FILE
NO. 1:15-CV-01386-SCJ

---

JACQUELINE MILBURN,

        Plaintiff,

    v.

GENTIVA HEALTH SERVICES, INC.,

        Defendant.

CIVIL ACTION FILE
NO. 1:15-CV-01394-SCJ

---

VICKIE DRAFTS,

        Plaintiff,

    v.

GENTIVA HEALTH SERVICES, INC.,

        Defendant.

CIVIL ACTION FILE
NO. 1:15-CV-01401-SCJ

---

SCOTT TOMKINS,

        Plaintiff,

    v.

GENTIVA HEALTH SERVICES, INC.,

        Defendant.

CIVIL ACTION FILE
NO. 1:15-CV-01451-SCJ

AO 72A
(Rev.8/82)

| | |
|---|---|
| JOELLEN POWLEY, <br><br>        Plaintiff, <br><br>    v. <br><br>GENTIVA HEALTH SERVICES, INC., <br><br>      Defendant. | CIVIL ACTION FILE <br> NO. 1:15-CV-01462-SCJ |
| MARIA SEIER, <br><br>        Plaintiff, <br><br>    v. <br><br>GENTIVA HEALTH SERVICES, INC., <br><br>      Defendant. | CIVIL ACTION FILE <br> NO. 1:15-CV-01442-SCJ |
| BARBARA ADAMS, <br><br>        Plaintiff, <br><br>    v. <br><br>GENTIVA HEALTH SERVICES, INC., <br><br>      Defendant. | CIVIL ACTION FILE <br> NO. 1:15-CV-01551-SCJ |
| TAMMY CHAPMAN, <br><br>        Plaintiff, <br><br>    v. <br><br>GENTIVA HEALTH SERVICES, INC., <br><br>      Defendant. | CIVIL ACTION FILE <br> NO. 1:15-CV-01575-SCJ |

AO 72A
(Rev.8/82)

| | |
|---|---|
| CHERYL GARNER,<br><br>   Plaintiff,<br><br>  v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01584-SCJ |
| MELISSA BROWN,<br><br>   Plaintiff,<br><br>  v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01562-SCJ |
| JUDITH LONG,<br><br>   Plaintiff,<br><br>  v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01746-SCJ |
| YVETTE SHERRILL,<br><br>   Plaintiff,<br><br>  v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01731-SCJ |

AO 72A
(Rev.8/82)

| | |
|---|---|
| OLAYINKA AKINMARIN,<br><br>       Plaintiff,<br><br>    v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>      Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01737-SCJ |
| MELISSA WHITMAN,<br><br>       Plaintiff,<br><br>    v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>      Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01981-SCJ |
| CHERYL ANN RICE,<br><br>       Plaintiff,<br><br>    v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>      Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-01990-SCJ |
| VALERIE FOWLER,<br><br>       Plaintiff,<br><br>    v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>      Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-02281-SCJ |

8

## ORDER

On July 14, 2015, the Court held a scheduling conference in this matter. At the conclusion of the hearing, the parties indicated to the Court that they were interested in pursuing settlement discussions. The Court stayed the case until August 17, 2015, to allow those discussions to proceed. Although the parties reported to the Court that they were not able to settle the matter at this time, they intend to continue discussions.

The Court now addresses matters raised during the scheduling conference. As the parties are aware, these cases originated out of litigation in Rindfleisch v. Gentiva Health Services, Inc., Civil Action No. 10-CV-3288-SCJ. Relevant for the purposes of addressing scheduling in the present cases, the Court ruled in Rindfleisch on the parties' cross-motions for summary judgment addressing certain legal matters regarding the manner in which Plaintiffs were paid. See Rindfleisch, Doc. No. [631]. The Court also denied Defendant's motion for leave to file interlocutory appeal. Id., Doc. No. [638]. Finally, the Court decertified the Rindfleisch collective action. Id., Doc. No. [674].

After decertification, Plaintiffs joined together and refiled their claims in Bailey v. Gentiva Health Services, Civil Action No. 1:14-CV-1892-MHC. The

9

Court, however, granted Defendant's motion for misjoinder. See Bailey, Doc. No. [26]. After that, Plaintiffs filed individual suits which – in normal course – have been assigned to various judges on the United States District Court for the Northern District of Georgia. At present time, thirty-two (32) of these individual suits have been assigned to the undersigned.

Shortly after the parties filed their Joint Preliminary Report and Discovery Plan, the Court requested that both parties file written briefs addressing whether claim or issue preclusion applies to this action based on the Court's previous summary judgment order in Rindfleisch. See Bratt v. Gentiva, Civil Action No. 1:15-CV-905-SCJ, Docket Entry of July 9, 2015.[1] The Court also heard argument on this issue during the July 14, 2015, scheduling conference.

As was clear from the discussion at the scheduling conference, the matter of issue or claim preclusion in this case is more complicated than it might appear at first blush. In broad terms, however, the Court finds it is not necessary to make any particular ruling with respect to issue or claim preclusion. The parties raised and briefed certain liability issues in Rindfleisch. As the presiding judge

---

[1]To date, the parties have filed identical pleadings in all thirty-two cases. For the ease of discussion, the Court will refer to the docket entries in the earliest filed case.

10

in Rindfleisch, the undersigned carefully considered those matters. As the Court mentioned at the scheduling conference, others may disagree with the rulings made by the Court at that time. But given the careful consideration the Court gave the matter in Rindfleisch, the Court will reach the same conclusions on those legal matters as in these thirty-two individual cases. Thus, there is no need for this Court to classify the matter as one of issue or claim preclusion. To the extent any formalities are required, the Court adopts its ruling in Rindfleisch in these thirty-two cases. See Rindfleisch, Doc. No. [631]. As the Court repeatedly cautioned during the scheduling hearing, however, whatever decisions it makes here with respect to these thirty-two cases have no control over the remaining cases assigned to other judges.

The Court now turns to the matter of determining what that ruling means for the litigation going forward in these cases. At the hearing, the Court confirmed that Plaintiffs' theory of liability continues to address wages paid under what the parties have referred to as "the PPV plan." (The Court discusses below the contours of "the PPV Plan."). See Bratt, Doc. No. [___], Hearing Transcript, July 14, 2015, at 35. Beyond that, to a certain extent, the Court finds the parties were talking past one another at the scheduling hearing. Despite the

11

fact that Plaintiffs' counsel stated their belief that discovery in these cases should proceed on damages only, Plaintiffs' counsel also readily agreed that if Defendants could demonstrate that at any relevant time an individual Plaintiff were paid on a "salary basis" – or otherwise not under "the PPV Plan" – then Plaintiffs "would not seek" damages for that time period. See id. at 38. Thus, as a practical matter, Plaintiffs appear to recognize that Defendant is entitled to attempt to demonstrate that any one of these Plaintiffs does not fall under the "PPV Plan" as the Court described in Rindfleisch.

The Court finds that this is an area of agreement between the parties, but the parties may not have recognized it as such due to certain choices of language. Take, for example, a situation where a Plaintiff was actually paid a permissible salary. Plaintiffs' counsel argued that they would not seek "damages" in such a case; Defendant's counsel argued that this is a situation of no "liability" against Defendant. As a matter of semantics, the Court agrees with Defendant. A plaintiff must first establish liability before discussing damages. If a plaintiff is paid under a permissible salary scheme, then a defendant has no liability to that plaintiff. It is not correct to state that a defendant is liable to that particular plaintiff, but the plaintiff simply has not suffered any damage.

12

But, again, as a practical matter, this choice of words does not matter. Whether one labels it a "damages" question or a "liability" question, what is at the heart of the parties' disagreement is how far the Court went in its ruling in <u>Rindfleisch</u> and what the parties will be permitted to explore in discovery now. Since that ruling will be the jumping off point for discovery in these thirty-two cases, the Court finds it useful to revisit the terms of that ruling in some detail.

The Court explained in <u>Rindfleisch</u> that certain of Gentiva's Clinicians were paid on a pay-per-visit plan or the "PPV Plan." <u>See</u> <u>Rindfleisch</u>, Doc. No. [631], at 3. Under the PPV Plan, Clinicians are paid "a set fee for a 'routine visit' to a patient's home.'" <u>Id.</u> The visit fees do not change based on the time it takes to complete an in-home visit. <u>Id.</u> Additionally, the Clinicians are paid a "flat rate" for non-visit related work. <u>Id.</u> Significantly, Gentiva considers the time it takes a Clinician to perform non-visit related work in determining the flat rate. <u>Id.</u>

In <u>Rindfleisch</u>, Defendant contended that the Clinicians were exempt from overtime payment under the FLSA because they were employed in a "professional capacity." <u>Id.</u> at 14. The Department of Labor has issued regulations which define "professional capacity" and outline the methods by

13

which an employee can be classified as such. Id. at 14-15. An employer must show that an employee is paid in a manner that satisfies the "salary basis" test in order claim the employee is exempt as a "professional." Id. at 15. The Department of Labor regulations provide two regulations which address the "salary basis" test: (1) "fee basis" under 29 C.F.R. § 541.605 or (2) "extras" under 29 C.F.R. § 541.604. Id. at 15.

In its motion for partial summary judgment, Defendant argued that the PPV Plan satisfied the "fee basis" test under the FLSA. Plaintiffs, however, responded that because Defendant considered the amount of time it took to perform non-visit related work, the PPV Plan was payment on both a fee basis and hourly basis, and therefore a "hybrid compensation system" (not a "fee basis" payment) and Clinicians would not be exempt. Id. at 4.

The Court agreed with Plaintiffs and held that Gentiva's non-visit fees did not satisfy the "fee basis" test under 29 C.F.R. § 541.605. Id. at 17-22. A "fee" that "varies based on the amount of time it takes to complete a specific activity does not satisfy the DOL regulation's salary basis test." Id. at 18. The Court rejected Gentiva's argument that subsection (b) of § 541.605 permitted an "employer to alter the amount of a fee based on the time it takes an employee to complete a specific activity, so long as the fee is not set on a straight hourly basis." Id. at 19. "Without question, Gentiva's non-visit fees vary based on the amount of time it

14

takes Clinicians to complete a specific non-visit activity. Therefore, the non-visit fees violate the clear language of 29 C.F.R. § 541.605(a)." Id. at 21-22 ("Subsection (b) of 29 C.F.R. § 541.605 merely provides a basis for determining whether or not a fee for a specific activity satisfies the salary basis test after the activity is complete.").

The Court also held that Gentiva's non-visit fees do not constitute an "extra" payment under 29 C.F.R. § 541.604. Id. at 22-29. The Court found such fees could not be "extra" under subsection (a) because they were not for work beyond the normal workweek, but rather encompassed events during the 40 hour workweek. Id. at 23-24. The fees also did not qualify under the subsection (b) "reasonable relationship" test because these "extras" did not guarantee Clinicians $455 in a given week. Id. at 26. The Court rejected Gentiva's argument that the fees would be satisfactory if they equated to $455 if the Clinician were to work a full 40-hour week performing the fee-compensated tasks. Id. at 26-28.

The Court concluded:

> Gentiva's non-visit fees under the PPV Plan do not satisfy salary basis test under 29 C.F.R. § 541.605, nor do they constitute extra payments under either subsection of 29 C.F.R. § 541.604. Therefore, as the non-visit fees are improperly based on the time it takes to complete a non-visit activity, Gentiva's PPV Plan violates the FLSA.

Id. at 28-29.

Based on the July 26, 2013, order in Rindfleisch, the Court finds that it has made the "legal" determination that "the PPV Plan" as described in the Court's order is invalid under the FLSA. But the Court finds the "factual" matter of whether any of these Plaintiffs fall under "the PPV Plan" during the entirety or portions of the relevant time period to be an open question that Defendant may explore in discovery. For example, in Rindfleisch, Plaintiffs proffered to the Court that 59.9% of Gentiva's Clinicians were switched over to the PPV Plan by the end of December 2008. See Rindfleisch, Doc. No. [631], at 3 n.2. That leaves open the possibility that some Clinicians were not paid under the PPV Plan.

The Court's order establishes potential liability only for those Clinicians who were paid under the PPV Plan. Defendant is entitled to discovery to determine whether each individual Clinician Plaintiff was actually paid under the PPV Plan. See Hearing Transcript, p. 19 ("[W]hat I am saying to the Defendants is that you all will have the right in discovery to determine who did fall under this plan and who didn't."); id. at 24 (Defendant arguing that some Plaintiffs were paid a salary and therefore not under "PPV Plan").

Furthermore, as the Court discussed in its order granting Defendant's motion to decertify, it is unclear that certain of the individual Plaintiffs ever worked over 40 hours per week. See Rindfleisch, Doc. No. [674], at 12. Defendant, in fact, asserts that almost one-third of its Clinicians never worked

16

over 40 hours per week.  Id.  If a Clinician did not work more than 40 hours per week, that Clinician cannot raise an overtime claim against Defendant.  As the Court explained above, this is a question of "liability" and not "damages."  Even if under the PPV Plan, if an individual Clinician did not work more than 40 hours per week, Defendant is not liable to that Clinician for overtime payments.  This is, after all, the precise reason the Court decertified the collective action. Defendant is entitled to utilize the discovery period to demonstrate whether it is liable to an individual Clinician on the basis of whether that Clinician ever worked more than 40 hours per week.

Finally, during the Court's scheduling conference, the parties touched on other matters that the Court should clarify.  Several times during the conference, the parties sparred over whether Defendant could still try to prove that a Clinician's compensation met the "reasonable relationship" test under 29 C.F.R. § 541.604(b) ("extras").  To answer this question, the Court must review the manner in which the issue was originally briefed in Rindfleisch in Defendant's motion for partial summary judgment, as well as the further explanation given by the Court in its order denying Defendant's motion for interlocutory appeal.

As the Court explained in its interlocutory order, Defendant never argued in its motion for partial summary judgment that its compensation plan satisfied the "salary basis" test via the method offered under 29 C.F.R. § 541.604(b).

17

Defendant never argued to the Court that any compensation received by Clinicians as "extras" satisfied the "reasonable relationship" test. Defendant never distinguished between subsections (a) and (b) of 29 C.F.R. § 541.604. See Rindfleisch, Doc. No. [638], p. 14. Although Defendant sometimes refers to this as its "incomplete" argument, see Hearing Transcript, p. 24, this issue was not a matter of limited space given the page limitations and the size of the plaintiff group. Defendant did not explain to the Court, for example, that it could not proffer a "reasonable relationship" argument for all 900 or more (at the time) Plaintiffs in the case. Rather, Defendant simply never made an argument at all based on the "reasonable relationship" test. Defendant did argue in general that the compensation scheme satisfied § 541.604 because some of the more "productive" Clinicians could earn between $150,000 and $240,000 per year which exceeded any $455 weekly minimum.

Rather than simply not consider any argument that could be made under 29 C.F.R. § 541.604(b), however, the Court looked at the evidence presented by Defendant to see whether it could satisfy the "reasonable relationship" test of subsection (b). The Court started off making a finding that Defendant had conceded that Clinicians were not guaranteed a weekly minimum of $455. See Rindfleisch, Doc. No. [631], p. 26; [638], pp. 15-16. Once the Court made this finding, several consequences flowed. The Court determined that regardless of

18

whether some Clinicians could make upwards of $250,000 per year or whether Plaintiffs' proffered "average annualized earnings" of $74,649.70 was accurate, Defendant could not argue backward from the ultimate compensation paid to these Clinicians. Id., Doc. No. [631], pp. 26-27.

The Court found that the purpose of the "reasonable relationship" test as set forth in the Department of Labor regulations was to prevent an employer from establishing "a pay system that calculated exempt employees' pay based directly upon the number of hours they worked multiplied by a set hourly rate of pay." Id. at 26. Approving such a system would allow the employer to dock a employee's pay based on partial day absences. Id. In particular, quoting from Department of Labor regulations, the Court noted that:

> if a nurse whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200; the employer could not guarantee such an employee only the minimum salary required by the regulation.

Id. at 28. And, here, Defendant did not even guarantee the $455 weekly minimum. The Court found that such a "guaranteed" payment was an illusion and had no "reasonable relationship" to compensation received by Clinicians. Id. Thus, despite the fact that for some Clinicians, their fees constitute a "vast majority of their pay," as argued by Defendant in the scheduling conference, see Hearing Transcript, p. 43, the Court has already determined as a legal matter,

19

that fact does not bring the PPV plan for some or all of those Clinicians within the "salary basis" test.

In the scheduling hearing, Defendant argued that it should be able to address the "reasonable relationship" test as to each of the thirty-two individuals in these cases. To the extent that any new "reasonable relationship" argument proffered by Defendant would simply lead to the same legal analysis as the Court has already conducted, the Court would not reconsider those arguments. If Defendant contends that it can satisfy the "reasonable relationship" for reasons outside of the Court's previous orders, the Court may need to consider that further. The bottom line is the Court intends to hold Defendant to its promise that "we are not going to litigate the issue again in front of you about a pay-per-visit program as it's modeled and what you said about a flat fee mixed with the hourly pay, the nonclient time." See Hearing Transcript, at 51.

Similarly, Defendant inquired at the scheduling conference whether it would have the ability to further investigate "extras" during discovery of the individual cases. The Court held that based on the "clear and unambiguous language" of the regulation, "subsection (a) allows for 'extra' payment only if an employee's compensation for his forty hour workweek satisfies the salary basis test." See Rindfleisch, Doc. No. [638], p. 9. The Court rejected Defendant's argument that "there is a legal question as to whether an employee can receive

20

pay that does not satisfy the salary basis test for hours included in the normal 40 hour workweek without losing the exemption for overtime pay." Id. The Court does not intend to revisit the question of whether "extra" compensation can be paid for hours worked during the normal workweek. The Court has also already rejected – and does not intend to revisit – Gentiva's argument "that compensation can be labeled 'extra' compensation under subsection (a) so long as an employee is guaranteed $455 a week." Id. at 11.

In summary, at the end of discovery, the Court anticipates that there will be a basket of Plaintiffs who were paid under the PPV Plan as the Court discussed in detail in Rindfleisch. For the same reasons as the Court found in Rindfleisch, Defendant is liable to these Plaintiffs because the manner in which Defendant paid them does not satisfy the exemption regulations under the FLSA. For these Plaintiffs, the only question is the amount of damages. But the Court anticipates that there will also be a basket of Plaintiffs who were not paid under the PPV Plan as described by the Court. These Plaintiffs have not yet established liability and the parties will have the opportunity to brief and argue liability to the Court.

Now that the Court has explained its views on the broad contours of discovery, the Court addresses particular matters raised by the parties at the scheduling hearing. The parties indicated to the Court that they were discussing

21

the manner in which discovery materials from <u>Rindfleisch</u> could be used in the instant cases. The Court expects that the parties will be able to reach agreement on this question. If not, the parties should contact the Court's Courtroom Deputy, Ms. Pamela Wright.

During the scheduling hearing, the Court indicated that it intended for the parties to work out amongst themselves the details of discovery such as number of depositions, interrogatories, requests for production, and requests for admissions. <u>See</u> Hearing Transcript, p. 16. The Court noted, however, if "we get to a point where I think we are bogging down in discovery on matters that I have already ruled on and decided on, I will go to [the] <u>Rindfleisch</u> template for discovery." <u>Id.</u> <u>See</u>, <u>e.g.</u>, <u>Rindfleisch</u>, Doc. No. [693].

The Court also discussed the possibility of creating a "master docket" to manage the litigation across the thirty-two cases. The Court has determined that it will not do so at this time. However, if circumstances change, the Court will issue an order giving the parties instructions on future filings.

The Court will permit a six month discovery track starting on September 1, 2015.

IT IS SO ORDERED, this *28th* day of August 2015,

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

22